## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

MAURICE GLADYS,        :
    Plaintiff,          :
                        :
                        :
vs.                    :        CIVIL ACTION 16-0275-CG-N
                        :
VINCENT NORMAN,      :
    Defendant.        :
                        :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R), and is now before the undersigned on Defendant's Motion for Summary Judgment (Doc. 23). After careful review of the pleadings, and for the reasons set out below, it is ordered that the motion be **GRANTED**, in part, and **DENIED**, in part.

### I.    Factual Background.

Plaintiff Maurice Gladys brings this suit against Officer Vincent Norman with claims of retaliation and excessive force in violation of the Eighth Amendment. In his complaint, Gladys alleges that while housed at Holman Correctional Facility, on February 6, 2016,[1] Defendant Officer Vincent Norman

---

[1]    In his complaint, Plaintiff indicates that the date of the complained of incident was February 6, 2015. (Doc. 10 at 4). In subsequent pleadings, Plaintiff articulates the year as 2016 (*see* Doc. 26), as do all of Defendant's pleadings and the prison records associated with the incident in question. (*See* Docs. 20, 21). As such, the undersigned determines the date

cut him with a pocketknife or box cutter and repeatedly beat him while he was lying face down, compliant on the floor. (Doc. 10).

According to Gladys, on February 6, 2016, he was involved in minor and quickly ended altercation with another inmate. (*Id.* at 4). Following the incident, Sergeant Christopher Earl ordered Gladys be taken to the infirmary to receive a body chart. (*Id.*). Defendant Vincent Norman and Officer Chris Quarles escorted Gladys to the infirmary, and it is during this escort that Gladys alleges Defendant Norman used excessive force against him in retaliation for the "longstanding beef" between the two men. (*Id.* at 4-5).

Gladys submits that inmates taken to the infirmary "must be handcuffed in the front," but that on this escort, Defendant Norman attempted to handcuff Gladys to the rear by screaming, "hands behind your back motherfucker". (*Id.* at 5). Gladys claims that as he questioned Defendant Norman regarding the words he used and the necessity of being cuffed behind the back, and Defendant Norman responded, "shut up bitch" and went "into a rage," using further profanity. (*Id.*). Defendant Norman radioed for the population gate to be closed and then turned toward Gladys with a pocketknife or box cutter in his hand. (*Id.*). Gladys claims Officer Quarles, who had been attempting to secure handcuffs on Gladys' left hand, released him and Defendant Norman "picked the Plaintiff up in the air and slammed the Plaintiff face down to the floor, stomping the plaintiff in the back of the head,

---

indicated in Plaintiff's complaint was an inadvertent mistake and considers the date of incident to be February 6, 2016.

and neck area," and at some point during the incident, Defendant Norman cut Gladys with the blade he was holding in his hand. (*Id.*). According to Gladys, additional officers arrived at the scene and witnessed the force used by Defendant Norman, and the responding officers restrained Defendant Norman, and Gladys was taken to the infirmary where he received a body chart. (*Id.*). Gladys claims he suffered pain from the assault as well as a cut on his neck and a "close black eye." (*Id.*).

Gladys brings this suit against Defendant Norman, in his individual capacity and seeks a jury trial and relief in the amount of $150,000.00 in the form of punitive, compensatory, and mental damages. (*Id.* at 7).

Defendant Norman has answered the suit, denied all allegations against him, and further asserted the defenses of absolute and qualified immunity.[2]

---

[2] Plaintiff Gladys specifically brings this suit against Defendant Vincent Norman in his individual capacity; thus, the defense of Eleventh Amendment, absolute immunity is not applicable. The defense of qualified immunity, which is applicable to defendants acting within their discretionary authority, *see Johnson v. Boyd*, 701 F. App'x 841, 847 (11th Cir. 2017), "protects . . . officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known.'" *Wells v. Talton*, 695 F. App'x 439, 443 (11th Cir. 2017) (citing *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). A plaintiff may "show that a constitutional right was clearly established in three different ways: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Hill v. Orange Cty. Sheriff*, 666 F. App'x 836, 839 (11th Cir. 2016) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d at 1291-1292)).
  In an Eighth Amendment excessive force case, "'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Bowden v. Stokely*, 576 F. App'x 951, 954-955 (11th Cir. 2014) (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.2002)). Therefore, if Gladys is able to establish his claim as laid out in his complaint, Defendant Norman cannot avail himself of the protection of qualified immunity from this action.

(Docs. 20, 21). In support of his defense, Defendant Norman has filed a Special Report, which includes his personal affidavit, as well as affidavits of four witnessing officers, and the medical, disciplinary, and internal investigation records related to the February 6, 2016 incident complained of in this action. (Docs. 20-22). The Court has converted Defendant's pleadings into a Motion for Summary Judgment (Doc. 23), and Plaintiff Gladys has responded to the motion. (Doc. 26). After a review of the record in its entirety, the Court has determined this motion is ripe for consideration.

## II. **Summary Judgment Standard**.

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the "initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608

(11th Cir. 1991) (bracketed text added) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  If the moving party does not have the burden of proof at trial, they may show that "there is an absence of evidence to support the nonmoving party's case." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (citations omitted).  Alternatively, the moving party may support its "motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* If the moving party meets this burden, the non-movant, as the party bearing the burden of proof at trial, must set forth specific facts, supported by citation to the evidence, to support the elements of the case at trial, and therefore, establish that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003).  "[A]ll reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant." *Citizens Trust Bank v. Lett*, 2015 U.S. Dist. LEXIS 90849, 2015 WL 4254561, at *1 (N.D.Ala. 2015).  The Court is obligated to construe the

record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Public Education for Bibb County*, 495 F. 3d 1306, 1313 (11th Cir. 2007).

### III.  Discussion.

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 Fed.Appx. 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). The parties do not dispute

that Defendant, as a correctional officer for the State of Alabama was acting under color of law.

"The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." *Id.* (citing *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003); *Bass v. Perrin*, 170 F.3d 1312, 1316 (11th Cir. 1999)). The Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (some internal quotation marks omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *Hudson v. McMillian*, 112 S. Ct. 995, 998, 503 U.S. 1, 5, 117 L. Ed. 2d 156 (1992) ('[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'") (citations omitted). "Therefore, the "Eighth Amendment prohibits prison officers from using excessive force against prisoners." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Thomas v. Bryant*, 614 F.3d at 1303-04). Thus, "[t]he 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (quoting *Hudson*, 503 U.S. at 7).

The Court of Appeals for the Eleventh Circuit has "identified five factors to help evaluate whether force was applied maliciously or sadistically." *Id.* (citing *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)): "(1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to that official; and (5) any efforts made to temper the severity of the use of force."[3] *Id.* (citations omitted). The court will review the evidence of record against these factors.

Defendant Norman declares:

> On February 6, 2016, I along with Officer Quarles was escorting Gladys to the shift office, after an officer had asked that Gladys be removed from his area. Inmate Gladys did not want to go to the shift office, which is where inmates are typically taken under these circumstances. Inmate Gladys was not handcuffed when we first started escorting him. However, given how belligerent and angry inmate Gladys was acting, at some point from a safety and security standpoint, Gladys needed to be handcuffed.

---

[3]    "The Supreme Court has 'rejected the notion that "significant injury" is a threshold requirement for stating an excessive force claim.'" *Id.* "Thus, while *de minimis* uses of force, absent exceptional circumstances, do not violate the constitution, *de minimis* injury does not necessarily bar a prisoner's excessive-force claim." *Id.* (citing *Wilkins v. Gaddy*, 559 U.S. at 37-38). "The extent of injury remains a relevant consideration and may provide an indication of the amount of force applied, but '[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts.'" *Id.*

> Gladys strongly objected to being handcuffed. As Officer Quarrels was trying to handcuff him, inmate Gladys swung at me with his left fist. I avoided contact with inmate Gladys' fist by ducking under it. Around this time a code for assistance was called and other officers came to assist us in getting control of the situation by trying to handcuff inmate Gladys. With other officers' assistance, I placed inmate Gladys face down on the ground, where Gladys continued to actively physically resist being handcuffed. Once inmate Gladys was handcuffed he became compliant and was then taken to the infirmary for a body chart.

(Doc. 20-1 at 2). Officer Quarles corroborates the facts laid out by Defendant but articulates that Gladys was being escorted to the shift office after fighting with another inmate.[4] (Doc. 21-1).

Similarly, responding officer Nathan McQuirter declares by affidavit that on February 6, 2016, he heard Gladys yelling and cussing down the hall and witnessed Gladys' refusal to be handcuffed and further observed Defendant Norman and Gladys "standing up tussling." (Doc. 20-3 at 1). Officer McQuirter asserts that he ran to assist Defendant Norman and Officer Quarles in placing Gladys on the ground and securing handcuffs on him. (*Id.* at 2).

---

[4]     Officer Christopher Quarles declares by affidavit dated March 2, 2017, that on February 6, 2016, he assisted Defendant Norman in escorting Gladys "to the shift office, after an officer had asked that Gladys be removed from his area because Gladys had been fighting with another inmate." (Doc. 21-1 at 2). Officer Quarles affirms that Gladys did not want to be taken to the shift office and became "loudly belligerent, and was fussing and cussing." (*Id.*). Officer Quarles further affirms that he decided for safety reason to place handcuffs on Gladys. (*Id.*). However, Gladys refused to be handcuffed. (*Id*) Officer Quarles states that as he cuffed Gladys' right hand, Gladys swung at Defendant Norman with his left fist. (*Id.*). Officers began to respond to the code for assistance that was called, and it took three officers to restrain and gain control of Gladys. (*Id.*). Once handcuffs were secured on Gladys, Officer Quarles affirms that Gladys became compliant and was walked to the infirmary for a body chart. (*Id.*).

Likewise, Officer Gary Scarbrough[5] and Sergeant Christopher Earl[6] affirm that they witnessed Gladys physically resist having handcuffs placed on him while he was lying on the ground. (Doc. 21-2; Doc. 20-4).

After the use of force, a formal Incident Report was prepared at the prison. It states that on February 6, 2016, at approximately 4:45 p.m.,

> Officer Norman ordered inmates on the hall to report to their assigned dorms. Inmate Maurice Gladys B/148938 refused to comply with the order and attempted to strike Officer Norman. Officer Norman dodged the fist and placed inmate Gladys to the floor using the two on one take down maneuver. Correctional Lieutenant Timothy Stidham, Correctional Officers Nathan McQuirter (Segregation Rover) and Douglas Parham (B dormitory Rover) arrived on the scene and assisted in restraining inmate Gladys to the rear in handcuffs and escorted him to the Infirmary for a medical evaluation completed by Rhonesha Hodges. Several pictures of inmate Gladys were taken for evidence purposes. Inmate Gladys was placed in segregation pending disciplinary action for Assault on an ADOC employee. Officer Norman was examined by medical staff with no injuries noted.

(Doc. 21-3 at 5). Additionally, the Duty Officer Report drafted by Defendant Norman following the incident details and provides the same facts contained in the Incident Report. (*See* Doc. 21-3 at 6).

---

[5]     Officer Gary Scarbrough declares by his affidavit dated March 6, 2017, that he responded to a call for assistance, but upon arriving at the code location, Officers Norman, Quarles, and McQuirter had Gladys on the ground but had yet to secure handcuffs on him. (Doc. 21-2 at 1-2). Officer Scarbrough affirms that while on the ground, Gladys physically resisted being handcuffed. (*Id*. at 1-2). Officer Scarbrough further affirms that he participated in escorting Gladys to the infirmary once Gladys was handcuffed and that Gladys did not voice any complaints to Officer Scarbrough except that he had been in a fight with another inmate. (*Id*. at 3).

[6]     Sergeant Christopher Earl affirms by affidavit, dated February 28, 2017, that on February 6, 2016, he responded to a call for assistance, but upon arrival at the location, he observed that officers already had Gladys on the ground. (Doc. 20-4 at 1). Sergeant Earl declares that Gladys continued to cuss and remain physically resistant to having handcuffs placed on him. (*Id*.).

Subsequent to the incident, Captain Darryl Fails conducted an investigation into the force used against Gladys. The unsigned Use of Force Investigative Report states:

> On February 6, 2016, inmate Maurice Gladys B/148938 attempted to strike Officer Vincent Norman with a close[sic] fist. Officer Norman grasped inmate Gladys around his waist a[nd] wrestle[d] him to the floor. Inmate Gladys stopped resisting and was secured in handcuffs. No further force used.
>
> Inmate Gladys stated, "I was being escorted by Officer Norman who cut me with a pocket knife and stomped and kicked me in my face all my injuries were documented on film."

(Doc. 21-3 at 7). The investigating officer concluded the force used by Officer Norman was "justified" to prevent further assault against him and was "minimal" in nature. (*Id*.). Furthermore, it was opined that the scratch on the left side of Gladys neck was "possibly" received while being restrained. (*Id*.).

The Disciplinary Report regarding the incident reveals that Gladys was charged with assaulting Defendant Norman, on February 6, 2016, at 4:45 p.m., in the Main Hall, but Gladys was found not guilty of the charges based on a procedural violation (that the disciplinary was not served within the proper time frame). (Doc. 21-3 at 2-3).

The body chart Gladys received on February 6, 2016, indicated that Gladys suffered a scratch to the left side of his neck and a bleeding left nostril. (Doc. 21-3 at 9). The medical record further indicates that Gladys reported to the examining nurse, "Officer Norman stomped me in my face." (*Id*.).

The record before the court also includes four photographs that were submitted for the court's review. The photographs depict different views of Gladys' body: (1) a frontal view of Gladys' face (primarily the left side), (2) a rear view of Gladys' upper back, neck, and head, (3) a profile view of the right side of Gladys' face and neck, and (4) the left side of Gladys' neck. (Doc. 21-3 at 10-13).

As the moving party, Defendant bears the initial burden on summary judgment of "identifying those portions of 'the pleadings, . . . admissions on file, together with the affidavits, . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. In support of his motion for summary judgment, Defendant Norman has presented evidence both that: 1) Gladys swung at him after refusing to be handcuffed (Doc. 20-1) *and* 2) Gladys swung at him after refusing to report to his assigned dorm (Doc. 21-3 at 5, 6).[7] Additionally, Defendant Norman has argued that Gladys physically resisted being handcuffed after being placed on the ground and that it required multiple officers to gain control over him. Defendant further

---

[7]    There are inconsistencies between the initial formal prison documentation collected after the incident and Defendant Norman's affidavit and supporting witnesses' declarations, whereas Plaintiff's version of the event has remained consistent from minutes following the incident. (*See* Doc. 21-3 at 2-3, 7-9).

       The documents compiled subsequent to the incident indicate that Defendant Norman ordered inmates to report to their dorms, but Gladys refused the order and attempted to strike Officer Norman. (*See* Doc. 21-3 at 5, 6). Defendant Norman now claims that he and Officer Quarles were escorting Gladys to the shift office after another officer asked that Gladys be removed from his dorm – a version which corresponds to the allegations of this suit. (Doc. 20-1 at 2). Additionally, Officers Quarles and Scarbrough affirm that Gladys was removed from his dorm for fighting with another inmate, which also corresponds to Plaintiff's claims. (Docs. 21-1).

contends through submitted affidavits that no pocketknife or box cutter was used by him or observed by witnesses, nor did Defendant Norman pick Gladys up and throw him to the ground, nor did he stomp or kick Gladys in the face, neck, and/or back, and neither did Defendant Norman have to be restrained. Defendant Norman also argues that the submitted photographs refute the injuries alleged by Gladys.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant, Gladys to show the existence of a genuine issue of material fact. *See Stabler v. Fla. Van Lines, Inc.*, Civ. A. No. 11-0103-WS-N, 2012 U.S. Dist. LEXIS 1637, 2012 WL 32660, at *5 (S.D. Ala. Jan. 6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).

> [P]laintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery. We repeat, however, that the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial.

*Id.* Additionally, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 254 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)).

Plaintiff reaffirms the allegations of his complaint in an unsworn statement that is self-styled as an affidavit.[8] (Doc. 26). Plaintiff does not deny

---

[8] "Unsworn statements do not meet the requirements of Fed. Rule Civ. Proc. 56(e) and cannot be considered by a district court in ruling on a summary judgment motion." *Carr v. Tartangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (internal quotes omitted); *accord*

or dispute that he attempted to punch Defendant Norman, but he does insist that the photographic evidence of record shows blood coming from his left nostril and that this injury was caused by the first kick to Plaintiff's face, and he reiterates that the force occurred while he was compliant, face-down on the ground. (Doc. 26 at 2-3). Additionally, Gladys argues that Officers Quarles and Scarbrough witnessed the use of force, specifically the of cutting Plaintiff's neck and "repeated[] stomping . . . in the face until blood shot out the nostril of the plaintiff." (*Id*. at 7).

In considering this motion for summary judgment, the undersigned has reviewed the record and concludes that based on the specific facts there was a need for force to be used. The record evidences that Gladys' behavior ranged somewhere between noncompliant and violent. Gladys admits in his pleadings that he "questioned the Defendant of the words used and the behind the back handcuffing." (Doc. 10 at 5). "Strict adherence to rules and orders within a penal institution's walls are necessary for discipline, and even more importantly, for the safety and security of inmates, guards, and visitors alike." *West v. Sconyers*, 2010 U.S. Dist. LEXIS 123573, 2010 WL 4822084, *7 (M.D. Ala. 2010) (unpublished). An inmate "is not at liberty to ignore or disobey,

*Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1248 n.8 (11th Cir. 2009); *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015) (same rule applies under the current version of Rule 56). Because the plaintiff's letter is unsworn, he cannot rely on it to defeat summary judgment. But because parties may make binding admissions in their unsworn briefs, *e.g., Shuler v. Ingram & Associates*, 441 F. App'x. 712, 719 (11th Cir. 2011), material in the plaintiff's response may be used against him. Nevertheless, the allegations, arguments and evidence are such that the result of the defendant's motion would be the same even had the plaintiff submitted a sworn response.

without consequence, the lawful orders of his custodians or the rules and regulations of a jail." *Id.* Moreover, Defendant Norman claims, and Gladys fails to dispute, that Gladys also attempted to punch Defendant Norman. Consequently, either act of defiance permits the use of some force; however, "government officials may not use gratuitous force against a prisoner who has been already subdued or . . . incapacitated." *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) (citations omitted). However, "[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists." *Id.* at 1304 (citations omitted).

Defendant Norman insists, and witnessing officers confirm, that Defendant Norman used only the minimum amount of force necessary to gain control of Plaintiff Gladys and the situation. Gladys, however, disputes this claim and alleges Defendant Norman cut him with some type of blade, slammed him into the floor, and stomped him in the back, neck, and face while he was lying on the ground. Both parties rely on the medical records and photographs to support their claims; however, these objective records fail to solidly support either parties' version of the events.

The medical records reflect that Gladys did suffer a bloody nose and cut to the neck, as alleged in the complaint. These injuries, however, could have been sustained during the struggle to restrain Gladys as argued by Defendant Norman. The photographic evidence also fails to provide a definitive answer. The scanned photographs are of such poor quality that it is difficult to discern

the extent of the alleged injuries. Indeed, it is plausible that upon review of the photographs that a reasonable juror could observe that Gladys received a black eye from the incident from the darker coloration under Plaintiff's left eye in the photograph; whereas, another juror may just as easily detect only shadows and bad angled photography. (*See* Doc. 21-3 at 10)[9]. Likewise, a reasonable juror could identify from the photographs red markings on Gladys' upper back and neck indicative of kicks or "stomps" as alleged in his complaint; whereas, another juror may perceive only low camera quality, resolution, and lighting. (*See id*. at 11). Additionally, reasonable fact finders could disagree as the depth and origin of the cut to Gladys' neck evidence in the photograph. (*See id*. at 13). Thus, the undersigned concludes that the photographic evidence, as presented, is inconclusive as *prima facie* evidence for establishing or disproving Gladys' claim.

Consequently, the movant, Defendant Norman, has failed to carry his burden of showing that there is an absence of evidence to support Gladys' case. Interpreting the evidence and drawing all justifiable inferences in favor of the nonmovant, Gladys, there remains a question of fact as to whether or not the force was applied maliciously or sadistically to cause harm as he alleges. Specifically, it is unclear from the record before the court the relationship between the need and amount of force used and the extent of the

---

[9] However, it appears from the first photograph that both of Gladys' eyes are fully open and the picture does not reflect the "close [sic] black eye" Plaintiff alleges that he suffered as a result of the incident.

resulting injury.  The record taken as a whole *could* lead a rationale trier of fact to find for Gladys.  As such, summary judgment on this claim should be denied at this time.

In his complaint, Gladys further alleges a claim of retaliation against Defendant Norman.  Gladys alleges that there was "longstanding beef" between the two, which caused Defendant Norman to use excessive force against him on February 6, 2016.  (Doc. 10 at 4).  Gladys claims Defendant Norman previously "threatened [him] with bodily harm." (*Id.*).

Defendant Norman denies the retaliation allegations and further submits that prior to the incident subject of this compliant, he "did not know inmate Gladys, other than the fact that he appeared to spend a lot of time in and out of lock-up." (Doc. 20-1 at 2).

> "To state a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action." *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-01 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)).  An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. . . .  Merely alleging the ultimate fact of retaliation, however, is insufficient.  . . . Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to demonstration of a retaliation claim. . . .
>
> If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done

> by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. . . . Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient evidence that the proffered reason for the adverse decision is a pretext for retaliation.

*Flynn v. Scott*, 2006 U.S. Dist. LEXIS 28280, at *14-16, 2006 WL 1236718 at *5-6 (M.D. Ala. May 8, 2006) (citations omitted). A prisoner "must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive." *Hempstead v. Carter*, 2006 WL 2092383, *5-6 (N.D. Fla. 2006) (emphasis added) (citing *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988)). "[A] causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. *Id.* (citing *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)). However, "[t]he relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" *Id.* (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). The prisoner must present with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted). While a plaintiff may not be held to a heightened burden of proof, *see id.* at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives),

courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled in part on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Gladys provides no facts to the Court evidencing a prior relationship with Defendant Norman, nor does he articulate any actual threat ever made against him by Defendant Norman. Gladys has also failed to show or even allege a causal connection between any past event and the February 6, 2016 incident. Defendant Norman, on the other hand, provides a legitimate reason for the force used against Gladys. As such, the record is completely void of evidence supporting a claim of retaliation, and Gladys has failed to carry his burden of establishing such a claim. For this reason, the undersigned determines that summary judgment should be granted in favor of Defendant Norman on this claim.

**IV.    Conclusion.**

Plaintiff Maurice Gladys has failed to show an Eighth Amendment constitutional violation on the part of Defendant Vincent Norman for retaliation against him. Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED** in favor of Defendant Norman

on this claim, and that Plaintiff Gladys' claim of retaliation be **DISMISSED** with prejudice.

Additionally, the undersigned concludes there remain issues of material fact regarding the Plaintiff's Eighth Amendment constitutional claim of excessive force. Accordingly, it is recommended that Defendant Norman is not entitled to judgment as a matter of law on this claim. Therefore, it is recommended that Defendant Norman's motion for summary judgment, as to the excessive force claim, be **DENIED** at this time.

It is further recommended that an evidentiary hearing be scheduled to address this claim.

The instructions below contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1)

waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **25th** day of **January 2018**.

*s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**